# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TAMMY L. ISAAC, | : | |
| Plaintiff, | : | |
| | | Case No. 3:06CV313 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.    INTRODUCTION**

When health problems prevent a person from performing his or her job, the Social Security Administration potentially provides financial assistance in the form of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The potential for such assistance has gone unrealized for Plaintiff Tammy L. Isaac, a former caterer and inspector.  (Doc. #8 at 3).

Isaac asserts that she has been unable to work since September 6, 2002 due to various ailments – most prominently "an arteriovenous malformation (AVM) (a rare condition that involves a tangle of abnormal blood vessels.)"  (Doc. #13 at 1).

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Isaac applied for DIB and SSI in March 2003.  The Social Security Administration denied Isaac's applications based mainly on Administrative Law Judge (ALJ) Thomas R. McNichols' conclusion that she was not under a "disability" (Tr. 12-20), a term of specialized and narrow meaning under the Social Security Act, *see Bowen*, 476 U.S. at 470.  ALJ McNichols' non-disability decision eventually became the Social Security Administration's final decision concerning Isaac's DIB and SSI applications.  As such, it is a decision subject to judicial review, *see* 42 U.S.C. §405(g), which Isaac is now due.

The case is pending on Isaac's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition and additional authority (Doc. #s 11, 12), Isaac's Reply (Doc. #13), the administrative record, and the record as a whole.  Isaac seeks an Order – under Sentence Four of 42 U.S.C. 405(g) – remanding, at a minimum, her case to the Social Security Administration to correct certain errors.  Isaac alternatively seeks a Sentence Six remand based on additional evidence she has attached to her Statement of Errors.  (Doc. #8 (exhibits attached).  The Commissioner seeks an Order affirming the ALJ's decision.

## II. ADDITIONAL BACKGROUND

Isaac completed school through the eleventh grade.  She was thirty-five years old at the time of the ALJ's decision.  These two facts place Isaac, respectively, in the categories of a "younger person" with a "limited education" for the purpose of resolving her disability claim.  (Tr. 19).

Isaac's impairments include pain on the left side of her body and depression. (Tr. 74; *see* Doc. #11 at 2-7 (and records cited therein); *see also* Tr. 79). During a hearing before the ALJ, Isaac testified that she suffered from leg pain caused by bladder surgery and a partial hysterectomy; that she has a tumor in her leg that cannot be removed surgically; and that she had, since 1996, a herniated disc in her neck. (Doc. #11 at 2-3 (and record citations therein)).

The parties have provided detailed and informative descriptions of Isaac's medical records and other pertinent evidence in the administrative record. *See* Doc. #8 at 3-8; Doc. #11 at 1-9. In light of this, and upon consideration of the complete record, there is no need to fully reiterate the parties' descriptions. Still, outlining several medical sources along party lines will help frame further review:

I. Isaac's Medical Sources

    A. Dr. Kaiser:

        1. Treating physician.
        2. Examined Isaac last on 1/4/06.
        3. Isaac essentially limited to sedentary work. (Tr. 296-97).

    B. Dr. Barrett:

        1. Treating specialist.
        2. Examined Isaac last 8/05.
        3. Isaac essentially limited to sedentary work. (Tr. 294-95).

II. The Commissioner's Medical Sources

    A. Dr. Sagone:

      1.      Ohio BDD record-reviewing physician.
      2.      Isaac has no severe impairment; her conditions should not last 12 months.
      3.      Record review and report dated 3/03. (Tr. 156).

B.    Dr. Long:

      1.      Radiologist.
      2.      Noted – AVM successfully embolized.
      3.      Report dated 8/5/04. (Tr. 239).

C.    Dr. McIntosh:

      1.      One-time examining psychologist for the Ohio BDD.
      2.      Diagnosed Isaac with adjustment disorder with depressed mood.
      3.      Mild-to-moderate limited ability to withstand work stress.
      4.      Able to concentrate to perform simple repetitive tasks.
      5.      Report dated 7/8/03. (Tr. 166-69).

## III.  "DISABILITY" DEFINED AND ADMINISTRATIVE REVIEW

Narrowed to its statutory meaning, the term "disability" includes only physical or mental impairments that are "medically determinable"; expected to cause death or last for a continuous period of not less than twelve months; and severe enough to prevent a person from engaging in "substantial gainful activity." *See Bowen*, 476 U.S. at 469-70; *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) ("disability" has same meaning in DIB or SSI context). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see also Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to determine whether a person is under a

disability using a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4), 920(a)(4).[2]  Although a dispositive finding at any step of the sequential evaluation terminates the ALJ's review, *see Colvin*, 475 F.3d at 730, if fully considered, the sequential evaluation answers the following questions:

    1.       Is the claimant engaged in substantial gainful activity?

    2.       Does the claimant suffer from one or more severe impairments?

    3.       Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4.       Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5.       Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 2 in Isaac's case, the ALJ found that she suffered from two severe impairments: chronic neck pain attributed to a herniated cervical disc with spondylosis, and "chronic leg pain with residuals of an emobolization procedure on a left pelvic arterial venous malformation...." (Tr.15)(citations omitted).  The ALJ concluded that Isaac had not met her Step-3 burden to show she had a Listing-level impairment.  (Tr. 16).

---

[2] The remaining citations to a particular DIB regulation incorporate its corresponding SSI regulation, unless otherwise noted.

The ALJ then assessed, at Step 4, Isaac's Residual Functional Capacity with specifics that are now a key point of dispute between the parties. The ALJ found:

> [T]he claimant has the residual functional capacity to do light work featuring: 1) alternate sitting and standing as needed; 2) no work above shoulder level on the left; 3) no work on uneven surfaces; 4) no repetitive use of foot controls on the left; 5) no repetitive twisting of the neck; 6) no climbing ladders, ropes, or scaffolds; and 7) no exposure to hazards. By definition, light work ordinarily requires the ability to lift 10 pounds frequently and 20 pounds maximum, and to engage in a good deal of sitting, standing, or walking.

(Tr. 17). This RFC assessment (and other findings) led the ALJ to conclude at Steps 4 and 5, respectively, that Isaac could not perform her past relevant work, but she retained the RFC to perform work that existed in significant number in the national economy. (Tr. 19-20).

The ALJ's findings throughout his sequential analysis resulted in his non-disability determination and denial of Isaac's DIB and SSI applications. (Tr. 15-20).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds on two paths: First, whether substantial evidence in the administrative record supports the ALJ's factual findings; and second, whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of

evidence but less than a preponderance...." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the evidence and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). Thus, the required review is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second path of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V. DISCUSSION

### A. The Parties' Contentions

Isaac alternatively seeks a remand under Sentence Six of §405(g) for consideration of her new and material evidence. She emphasizes that she was not represented by an

7

attorney during the ALJ's hearing but was instead represented by "a non-attorney who was employed by the Montgomery County Department of Job and Family Services." (Doc. #8 at 16). The ALJ noted this fact at the start of his decision. (Tr. 12).

Isaac contends that her non-attorney representative was confused about the completeness of the administrative record. (Doc. #8 at 16). She has submitted the missing, additional exhibits in support of her Statement of Errors.

The Commissioner contends that the additional evidence is neither new nor material and consequently Isaac's attempt to obtain a Sentence Six remand lacks merit.

### B.     Sentence Six Remand

#### 1. Applicable Standards

A Sentence Six remand is warranted when "new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991); *see Hollon ex rel. Hollon v. Commissioner of Social Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). A Sentence-Six remand is warranted only if (1) the additional evidence is both new and material, and (2) good cause exists for the failure to incorporate the additional evidence into the administrative record. *See* 42 U.S.C. §405(g); *see also Melkonyan*, 501 U.S. at 89; *Bass II v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Isaac, the party seeking remand, bears the burden to establish the grounds for remand. *Hollon*, 447 F.3d at 483.

**2.**
**New Evidence and Good Cause**

To demonstrate that her additional medical records constitute "new" evidence, Isaac must demonstrate that the records "were not in existence or available to [her] at the time of the administrative proceeding." *Hollon*, 447 F.3d at 483-84.  Isaac easily satisfies this requirement as to certain evidence, because the Commissioner acknowledges, "some additional evidence would be considered 'new.'" (Doc. #11 at 18, n.2).  This evidence is an April 10, 2006 pelvic CT scan and a June 30, 2006 pelvic MRI – both constitute new evidence because each postdates the ALJ's April 3, 2006 decision.

In addition, the following records constitute new evidence because they were not available to Isaac before the ALJ's decision.

1. Hospital records of treatment by Dr. Barrett and others between January 28, 2005 through April 3, 2006.

2. Pelvic CTs dated November 7, 2005 and August 15, 2005.

3. Pelvic MRI dated March 14, 2005.

*See* Doc. #8 at 15 (and Exhibits cited therein).  Although these records existed before the ALJ's decision, they were effectively unavailable to Isaac due to her non-attorney representative's misunderstanding about what was missing from the administrative record, and the representative's resulting failure to submit the above hospital records. The representative's statements to the ALJ on the record and in Isaac's presence establish that she (the representative) incorrectly thought the record was complete, except for some of Dr. Kaiser's records.  *See* Tr. 314-15.  Having thus informed the ALJ and Isaac about

9

the presence of all but a few records from Dr. Kaiser, the representative led Isaac to reasonably believe that the record was complete, when it was not.  In this manner, the representative effectively made the missing hospital records unavailable to Isaac, who should not be deprived of an administrative review of a full and fair record due to her non-attorney representative's mistake.

The representative's error further ties into the existence of "good cause" for Isaac's failure to present the hospital records to the ALJ.  This is so because it was reasonable for Isaac to rely on her representative's knowledge (albeit incorrect) about what the administrative record contained and lacked.  To conclude otherwise (finding unreasonable reliance on the representative) would require overlooking the reality Isaac faced during the administrative hearing: she was in an unfamiliar setting involving issues of critical significance to her; the resolution of those issues involved complex medical and legal matters; the administrative record being compiled at that time already contained many medical records describing Isaac's medical care over the recent years; and the outcome of the hearing depended on an intricate interplay of medical and legal issues that must surely seem arcane to any thoughtful layperson.  Facing that situation, rather than relying on her subjective memory and/or personal review of the record, Isaac reasonably turned to and relied on her representative's knowledge of the record, and as a result, the missing hospital records were unavailable to her and good cause existed for their absence  from the administrative records.  *See Hollon*, 447 F.3d at 485 ("good cause" shown by "demonstrating a reasonable justification for the failure to acquire and present the

evidence for inclusion in the hearing before the ALJ.").

### 3.
### Materiality

To be material under Sentence Six, Isaac's new evidence "must demonstrate that there was a reasonable probability that the Secretary [now, the Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *See Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Foster*, 279 F.3d at 357.

Isaac's new evidence is material to her case and the ALJ's decision. The ALJ rejected the opinions of both Dr. Barrett and Dr. Kaiser in part because of the the lack of supporting objective medical evidence. *See* Tr. 15. Isaac's new evidence includes such evidence, for example, certain radiographic studies documenting an arteriovenous malformation in the deep fatty tissues of the left buttock. *See* Doc. #8, Attachment 1 at pp. 9-12.

The Commissioner contends, "The ALJ found that Plaintiff continued to have ongoing complaints of pain after her embolization procedure and that *the residuals of her AVM* would significantly limit her ability to perform strenuous physical demands." (Doc. #11 at 19)(citing Tr. 15) (emphasis added). This contention lacks merit because it is reasonable to read the ALJ's decision as based on his conclusion that the AVM tumor had disappeared as a result of the embolization procedure. This conclusion appears through the ALJ's use of the phrase "the residuals of her AVM" (Tr. 15), strongly indicating that

11

the ALJ considered what "remained" once the AVM disappeared due to the embolization procedure. Given this, Isaac's new objective medical evidence tends to contradict the ALJ's decision because it confirms the AVM's presence after the embolization procedure. In addition to the radiographic studies, a report of the CT results concerning Isaac's pelvis revealed no change in the appearance of the AC malformation and which, the report stated, "has undergone both surgery and embolization." (Doc. 8, Attachment 1at p. 20).

For these reasons, materiality exists since Isaac has demonstrated the existence of a reasonable probability that the ALJ would reach a different conclusion if presented with the new evidence.

## 4.
## Conclusion

Isaac's additional evidence is both new and material, and she has demonstrated good cause for not submitting it to the Social Security Administration. A remand under Sentence Six of 42 U.S.C. §405(g) is therefore warranted. Because a Sentence Six remand is warranted, the Court declines to address Isaac's remaining arguments in support of her request for a remand under Sentence Four of §405(g). *See Melkonyan*, 501 U.S. at 98 (a Sentence Six remand "does not rule in any way as to the correctness of the administrative determination"); *see Raitport v. Callahan*, 183 F.3d 101, 103-04 (2nd Cir. 1999)(sentence-six remand involves no substantive ruling on correctness).

**IT IS THEREFORE RECOMMENDED THAT:**

1. No finding be made as to whether Plaintiff Tammy L. Isaac is under a "disability" within the meaning of the Social Security Act; and,

2. The case be REMANDED to the Commissioner under sentence six of 42 U.S.C. §405(g).


January 30, 2008                                                s/ Sharon L. Ovington  
                                                                                    Sharon L. Ovington  
                                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).